## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ANTONIA CHICO GOMEZ**<br><br>Plaintiff<br><br>V.<br><br>**DR. LUIS A. GONZALEZ ALONSO** and his conjugal partnership**; SIMED** as his insurer; **SAINT LUKES HC FAJARDO A/K/A SALUD EN EL HOGAR Y HOSPICIO SAN LUCAS, ADMIRAL INSURANCE COMPANY as their insurer; JOHN DOE & RICHARD ROE and A, B & C INSURANCE COMPANIES** as their insurers<br><br>Defendants | **CIVIL NO:**<br><br><br><br>*MEDICAL MALPRACTICE*<br><br>*JURY TRIAL DEMANDED* |

# C O M P L A I N T

***TO THE HONORABLE COURT***:

***C****OMES NOW* plaintiff, through his undersigned attorney and very respectfully set, forth, and request:

## I.  **PARTIES**

1.      Plaintiff Antonia Chico-Gómez is of legal age, single, resident, and domiciled in the State of Florida, United States of America and to the best of his belief and understanding a medicare recipient, at all times relevant to this claim.

2.      Co-defendant, **DR. LUIS A. GONZÁLEZ- ALONSO,** hereinafter referred to as "**DR. GONZÁLEZ**" is, to plaintiff best belief and understanding, a duly licensed medical physician  and resident of the Commonwealth of Puerto Rico, who as of the dates particularly recited in this complaint managed, treated and cared for Antonia Chico-Gómez, hereinafter referred to as "Mrs. Chico".   Plaintiff hold that in the event that Dr. González is confirmed to have been married as of the date of the occurrences

alleged in this complaint, the conjugal partnership of Dr. González and his currently unidentified wife JANE DOE is also to be held responsible for the damages sought herein, since said partnership benefits from the doctor's economic gains.

3.      Co-defendant **SIMED** is to plaintiff best belief and understanding a duly organized entity engaged in the insurance business who, at the time of the incidents asserted herein, could have been in full force and effect any type of insurance policy covering Dr. Luis A. González Alonso.

4.      Co-defendant **ST. LUKES HC FAJARDO A/K/A SALUD EN EL HOGAR Y HOSPICIO SAN LUCAS**, hereinafter referred to as "**Hospicio San Lucas**", is to plaintiff best belief and understanding a legal entity organized under the laws of the Commonwealth of Puerto Rico who, at all times herein pertinent, was the owner and/or proprietor and/or administrator and/or operator of a medical services institution located in Fajardo, Puerto Rico, where paramedical and physical therapies services were rendered to Mrs. Chico.  Co-defendant "Hospicio San Lucas" is also the employer and/or contractor and/or supervisor of the medical, nursing and/or  physical therapist personnel, who attended Mrs. Chico, while at Hospicio San Lucas.

5.      Co-defendant **ADMIRAL INSURANCE COMPANY** is deemed to be duly organized entity engaged in the insurance business who, at the time of the incidents asserted herein, could have had in full force and effect  any type of insurance policies covering co-defendant "Hospicio San Lucas" as to applicable to claims made herein.

6.      Co-defendants **John Doe and Richard Roe** are so designated to identify any unknown person, who might have partaken in Mrs. Chico's care, treatment, and management, or who could have furnished she negligent treatment before, during, or after the operation, either by act or omission, and who could be liable to plaintiff herein.

7. Co-defendant **Insurance companies A and B** are deemed to be duly organized entities engaged in the insurance business who, at the time of the incidents herein alleged, could have had in full force and effect insurance coverage of any form or nature covering and/or applicable to any of the named or unidentified defendants, corporations and/or physicians, whoever they are.

## II.  JURISDICTION AND VENUE

8.   This Honorable Court has jurisdiction over the present action in accordance with 28 U.S.C. Sec. 1332, as diversity of jurisdiction is invoked pursuant to the fact that the plaintiff  "Mrs. Chico" is resident of the States of Florida, defendants are residents of the Commonwealth of Puerto Rico and the matter in controversy exceeds (exclusive of interests and costs) the jurisdictional sum of $75,000.00. Venue in the District of Puerto Rico is proper under 28 U.S.C. § 1391(b) in as much as all events relevant to this claim occurred within this District.

## III.  TOLLING OF STATUTE OF LIMITATIONS

9.   Plaintiff tolled the statute of limitations in the present action by extrajudicial claim letters, dated February 12, 2013, March 11, 2013, September 26, 2013 and January 10, 2014.

10.   In consideration to the fact that defendants are deemed jointly and severally accountable to the plaintiff for all claims herein portrayed, the timely extrajudicial claims tolling effect is applicable to all defendants herein.

## IV.  FACTUAL ALLEGATIONS

11.   The facts and events which plaintiff allege in this complaint ensued within the municipality of Fajardo, Puerto Rico.

12.   The claimant hold that "Mrs. Chico" suffered a fall at her home on February

18, 2012, following which she was ambulance transported to the Emergency Department of HIMA San Pablo Fajardo Hospital (HIMA). After being evaluated by the on duty physician, Mrs. Chico was consulted with Dr. Gonzalez-Alonso, an On Call HIMA Orthopedist Surgeon.

13. Dr. Gonzalez-Alonso evaluated Mrs. Chico at HIMA Emergency Department and diagnosed a right leg ankle fracture (trimaleolar and dislocation), following which he proceeded to perform a closed reduction and placed her leg in a "splint cast". That night Dr. González-Alonso ordered Mrs. Chico's admission to HIMA under his services for surgery.

14. On February 23, 2012, Mrs. Chico's was submitted to an open reduction with internal fixation of her right ankle, under spinal anesthesia, by Dr. González-Alonso. She was thereafter discharged home on February 25, 2012, with an appointment to his office within 5 days.

15. On February 29, 2012, Mrs. Chico's was seen by Dr. González-Alonso at his office, during which visit he changed the "splint Cast" and gave her a next appointment for March 7, 2012, in order to remove stitches/sutures (sort of clips).

16. On March 7, 2012, Dr. González-Alonso removed stitches from Mrs. Chico's right leg, which was swollen and revealed a blood clot on the wound. Due to this clot and patients being a diabetic, she and relatives questioned the physicians order that his assistant place her in a long hard plaster cast, extending from her knee too her right foot, exposing only her toes. Dr. González-Alonso's order was nonetheless carried out and patient given an appointment for within four (4) weeks.

17. On Dr. González-Alonso referral, during the 4 weeks that Ms. Chico's had on the long hard cast, she was visited at home by San Lucas Home Care a/k/a "Salud en el Hogar y Hospicio San Lucas" staff personnel, who furnished her right leg

therapies.

18.   These therapy sessions were extremely painful, given that as her right leg became contracted (undistended) the cast became loosened and she felt hurtful friction on movements. In spite of her complaints, San Lucas therapist claimed that this was all normal for the procedure.

19.   On April 4, 2012, after 4 weeks of having the long plaster cast and as scheduled, Ms. Chico's attended her appointment with Dr. González-Alonso, who ordered the removal of the plaster cast.

20.   When the orthopaedic technician cut and removed the cast their emerged that the surgical wound area had a large ulcer, feted and with a greenish foam, denoting an infected lesion. Since then Mrs. Chico's pain and suffering intensified. Despite complying with all medical treatments ordered by Dr. González-Alonso, Mrs. Chico's felt no improvement and quite the opposite her condition continued to worsen.

21.   Both, Dr. Gonzalez-Alonso and San Lucas staff, failed to address, timely manage and hence take appropriate measures, to include consultation with a medical specialist, in order to curtail and prevent patients further deterioration.

22.   During the months Mrs. Chico's  was managed by Dr. Gonzalez-Alonso he allowed, tolerated and through his idleness, contributed to the accretion of patients infection upon not taking necessary proper steps to avoid its furtherance, enabling it to reach bone profundity, thus causing osteomyelitis, that on June 15, 2012 entailed surgery as well as prolonged hospitalization in Guaynabo's Professional Hospital.

23.   Due to the severity of Mrs. Chico's  infected right leg ulcer, she was submitted to numerous surgeries and has been repeatedly hospitalized, has undergone intense, excruciating and painful medical treatment, resulting in her becoming wholly

dependent on family and relatives in order to carry out her care and daily living.

24.   Following this painful and excruciating sequence of events Mrs. Chico's leg was eventually amputated below knee on September 4, 2013, due to chronic osteomyelitis of the right ankle, foot and lower tib-fib region,  at Florida Hospital Flager in Palm Coast, Florida, where she opted to set her domicile.  Currently Mrs. Chico ambulates with a prosthesis and receives physical therapy at Freytag Outpatient Rehabilitation Center in Florida.

## V. **NEGLIGENCE**

### COUNT I  Negligence – Medical Malpractice Dr. González-Alonso

25.   The Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1- 24 above.

26.   Co-defendant Dr. González-Alonso deviated from the acceptable standard of medical care, during his post-surgery care of Mrs. Chico's, on failing to properly manage and treat her condition and speedily following her early signs of infection.  Dr. González-Alonso deviated from the acceptable standard of diabetic outpatient medical follow-up.

27.   Co-defendant Dr. Gonzalez-Alonso flagrantly breached his duty to use such skill, prudence, and diligence, in providing medical attention as to avoid deterioration of patients condition.

28.   Dr. Gonzalez-Alonso delay in diagnosis of ischemia associated with diabetic ulceration, his failure to aggressively treat the infection and timely refer her to another doctor specializing in the relevant disease or injury, was the prime, direct and proximate cause of all plaintiff's injuries and damages.

29.    Co- defendant Dr. Gonzalez-Alonso further failed to explain, advise and

adequately warn Mrs. Chico's as to the medical risks involved in her treatment and to arrange judicious follow-up session, or further tests for the patient.

**COUNT II  Negligence – San Lucas Home Care "Hospicio San Lucas"**

30.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-29 above.

31.    San Lucas Home Care "Hospicio San Lucas" was thoroughly aware that Mrs. Chico's was a diabetic, whose weakened immune system placed her at higher risk of developing complications, but nonetheless neglected to take this into consideration and on structuring her care management.

32.    "Hospicio San Lucas" must have procured Mrs. Chico's complete and accurate health history, in order to have structured her individualized care plan and avoid foreseeable complication stemming from negligent care.

33.    "Hospicio San Lucas" failed to meet the above stated standards and on the contrary, submitted Mrs. Chico to multiple physical therapy sessions with a lose plaster cast that provoked ulcers. Due to their oversight and neglect, Mrs. Chico's ulcers worsened and evolved into infected ulcers and eventually to osteomyelitis.

34.    Plaintiff hold defendants was jointly and severally accountable for her damages and consequently, their responsibility is contractually shared with their respective insurance carriers in consideration to the terms of issued insurance policies and provisions of laws of the Commonwealth of Puerto Rico, in particular Articles 1802 and 1803 of Title 31 (31 L.P.R.A. Sections 5141 and 5142), and to vicarious and Corporative responsibility.

35.    S.I.M.E.D., as Dr. Gonzalez-Alonso insurer, is accountable to the plaintiff for the insures acts of medical malpractice in conformance with the terms and conditions

of their insurance contract.

36.  ADMIRAL Insurance Company, as San Lucas Home Care "Hospicio San Lucas"  insurer, is accountable to the plaintiff for the insures acts of personnel malpractice in conformance with the terms and conditions of their insurance contract.

## VI.  DAMAGES

37.    In accordance with the foregoing, plaintiff claims the following :

      a.     Damages sought by plaintiff for pain, anguish and  emotional suffering resulting from the negligent acts and/or omissions of the defendants is in summary calculated in the sum of One Million Dollars ($1,000,000);

      b.     For plaintiff physical disability and loss of quality of life amounting to no less than  One Million Dollars ($1,000,000).

38.    Plaintiff requests trial by jury on all issues.

**WHEREFORE**, the plaintiff respectfully requests this Honorable Court that it grant the relief requested herein, together with a reasonable  amount for attorney's fees, interests, and costs in the prosecution of this action.

**RESPECTFULLY SUBMITTED**.

In Fajardo, Puerto Rico, this March 31, 2014.

**RUIZ & REYES LAW OFFICES**
Attorneys for the Plaintiff
PO Box  1232
Fajardo, PR  00738-1232
Tel. (787) 801-8754
Tel. & Fax: (787) 801-6986
E-mail: ruiz@ruizreyeslaw.com


*s/Ricardo Ruiz Díaz*
**RICARDO RUIZ DIAZ**
USDC-PR:  118613