IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ANTONIA CHICO GOMEZ**, <br><br> Plaintiff, <br><br> v. <br><br> **LUIS A. GONZALEZ ALONSO,** *et al.*, <br><br> Defendant. | Civil No. 14-1268 (BJM) |

## OPINION AND ORDER

In an amended complaint, plaintiff Antonia Chico-Gomez ("Chico") brings this diversity action against Dr. Luis A. Gonzalez Alonso ("Dr. Gonzalez"), SIMED, his insurance company, and others, alleging medical malpractice under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142. Docket No. 34. Plaintiff seeks monetary compensation. Defendant moved to dismiss for lack of subject matter jurisdiction per Fed. R. of Civ. P. 12(b)(1) ("Rule 12"). Docket No. 65. Plaintiff opposed, Docket No. 66, and an evidentiary hearing was held on May 31, 2016. Docket No. 77. The case is before me on consent of the parties. Docket No. 19.

For the reasons set forth below, the motion is **GRANTED.**

## MOTION TO DISMISS STANDARD

Rule 12 provides a mechanism for challenging the court's subject matter jurisdiction. As courts of limited jurisdiction, federal courts are bound to construe jurisdictional grounds narrowly. *See, e.g.*, *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979). When deciding a motion to dismiss under Rule 12, a court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences

Chico-Gomez v. Gonzalez, *et. al.*, Civil No. 14-1268 (BJM)                                                                  2

in the non-movant's favor. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006); *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 144 (1st Cir. 2002). The party asserting federal jurisdiction has the burden of proving its existence by the preponderance of the evidence. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995); *Bank One, Texas v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992).

Rule 12 may be used to attack two different types of defects: first, it may attack the facial sufficiency of the jurisdictional allegations of the complaint; second, it may challenge the factual basis for the court's subject matter jurisdiction even despite the formal sufficiency of the jurisdictional allegations of the complaint. *See* Wright & Miller, Federal Practice & Procedure, Civil 3d § 1350 (2006). In this case, defendants challenge the existence of diversity jurisdiction "factually," that is, by "controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). In such cases, "the plaintiff's jurisdictional averments are entitled to no presumptive weight [and] the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id*. While making this determination, the court can look beyond the pleadings and can conduct discovery, consider extrinsic evidence, or hold evidentiary hearings. *Alers v. Barcelo*, No. CV 14-1756 (GAG), 2016 WL 226847, at *2 (D.P.R. Jan. 19, 2016) (quoting *Valentin*, 254 F.3d at 363); *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). Under Rule 12, "dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable." *Dennehy v. Frames*, 385 F. Supp. 2d 121, 123 (D.P.R. 2005).

## BACKGROUND

The complaint alleges that Chico suffered a fall at home resulting in a fracture of the right ankle. Docket No. 34 ¶ 14. She was taken to the hospital, where Dr. Gonzalez performed surgery. *Id*. ¶15. Following her operation, the surgical incision became ulcerated and severely infected. *Id*. ¶¶ 22 – 34. Chico relocated to Florida, seeking medical treatment for her leg. *Id*. ¶ 47. Ultimately, this severe condition required leg amputation. *Id*. ¶¶ 47 – 48. She alleges medical malpractice in the treatment rendered by Dr. Gonzalez.

The following facts, related to the jurisdictional issue, are uncontested pursuant to the evidence presented at the evidentiary hearing. Testimonies of Chico and her daughter, Tomasa Jimenez-Chico, were heard on behalf of the plaintiff and cross-examination was conducted. Chico arrived to Florida on August 24, 2013 seeking medical treatment for her leg. She lived with her granddaughter in Costa Palma, Florida until her subsequent return to Puerto Rico, but cannot state her exact address in Florida. She owns no property in Florida, pays no rent or taxes there, and did not open a bank account in Florida. But, she had a Florida Medicaid plan, Florida identification card, Florida voter registration card, received a letter from the Social Security Administration at her granddaughter's address, and attended church. Docket No. 77, Exs. 1 – 4; Docket No. 66, Ex. 3 at 23: 1 – 17.

On August 25, Chico went to the emergency room at Florida Hospital Flagler, where she received a diagnosis that her leg would have to be amputated below the knee. She presented Puerto Rican medical insurance to pay for the treatment, but was told it would not cover all required therapies and treatments. Her granddaughter subsequently requested a Florida Medicaid plan on Chico's behalf.

Her leg was amputated on September 3. She underwent out-patient treatment and therapy until being discharged from the hospital on March 24, 2014. Treatment for her leg concluded after amputation, subsequent therapies, and prosthesis. While at the hospital, Chico was interviewed by various doctors. She told them she was visiting Florida, and currently living in Puerto Rico.

On April 4, Chico returned to her home in Fajardo, Puerto Rico, where she remains up to the present date. She retained the property while living in Florida, which she has owned for more than 15 years and receives mail and water and electric bills there. She claims she returned to Puerto Rico to renovate her home and sell it, hoping to return to Florida and rent an apartment there. Chico's sons have renovated the roof, but she claims the renovations are incomplete because she has run out of money. Upon returning to Puerto Rico, she has been receiving medical treatment that is being paid for by her Puerto Rican medical plan, MCS Classic Care.

Chico also retained her Puerto Rico bank account while living in Florida, and her Social Security benefits are deposited there; and she is still registered to vote in Puerto Rico. Chico has four children who live close in Fajardo and help her with traveling to doctor's appointments and by providing money. She also has eleven grandchildren, nine of whom live in Puerto Rico.

## DISCUSSION

Dr. Gonzalez, domiciled in Puerto Rico, argues that this court lacks subject matter jurisdiction because no diversity of citizenship existed when the complaint was filed. He contends Chico failed to establish domicile in Florida because upon conclusion of her medical treatment, she intended to return to Puerto Rico. Docket No. 65. Chico opposed,

claiming that she is domiciled in Florida and intends to remain there for superior medical treatment and quality of life, and has only returned to Puerto Rico to renovate and sell her home to pay for an apartment in Florida. She also argues that she has proved her domicile by obtaining a Florida identification card, voter's identification card, and a Florida Medicaid plan. Docket No. 66.

Diversity jurisdiction governed by § 1332 states that "[t]he district courts shall have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000…." 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity between plaintiff and all defendants. *Casas Office Machines v. Mita Copystar Am., Inc.*, 42 F.3d 668, 673 (1st Cir. 1994). For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit. *Valentin*, 254 F.3d at 361. Accordingly, the critical date here is March 31, 2014. Docket No. 1. "The key point of inquiry is whether diversity of citizenship existed at the time the suit was filed; subsequent events may bear on the sincerity of a professed intention to remain but are not part of the primary calculus." *García Pérez v. Santaella*, 364 F.3d 348, 350–51 (1st Cir. 2004) (citing *Hawes*, 598 F.2d at 700; *Miranda v. Miranda*, 686 F. Supp. 44, 47 (D.P.R. 1988)).

For purposes of diversity jurisdiction, a person establishes his citizenship in a state simultaneously with his establishment of domicile. *Williamson v. Osenton*, 232 U.S. 619, 625 (1914). Domicile requires both physical presence in the state and the intent to remain there indefinitely: a person's domicile is the "true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (internal citations omitted).

There is a presumption of "continuing domicile." *Hawes*, 598 F.2d at 701 ("[U]ntil a new [domicile] is acquired, the established one continues."). And, when claiming to have changed domicile, a plaintiff carries a "heavy burden" to demonstrate that he has, in fact, established a new domicile, in order for the previously established domicile to "not control." *Rivera v. Hosp. Interamericano de Medicina Avanza*, 125 F. Supp. 2d 11, 17 (D.P.R. 2000).

To change domicile from Puerto Rico to Florida, Chico must demonstrate two things: physical presence in Florida and the intention to remain there indefinitely at the time of filing suit. *Valentin*, 254 F.3d at 366; *Montle*, 964 F.2d at 50. In determining the intent of the party to remain, the analysis calls for a "totality of the evidence" approach. It is well established that common factors relevant to a determination of a person's domicile include the place where civil and political rights are exercised, taxes are paid, real and personal property are located, driver's and other licenses obtained, bank accounts are maintained, the location of club and church membership, and places of business and employment. *Montle*, 964 F.2d at 50. No single factor is conclusive. *Rivera*, 125 F. Supp. 2d at 18. The First Circuit considers registration to vote a "weighty" factor in ascertaining domicile, *id.*, but does not automatically presume domicile in a state where a party is registered to vote. *Padilla-Mangual v. Pavía Hosp.*, 516 F.3d 29 (1st Cir. 2008) (citing *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8 (1st Cir. 1991)).

However, the court must look to the characterization and substantive nature of these ties to the new domicile. *García Pérez,* 364 F.3d 348 at 351 (citing *Lundquist,* 946 F.2d 8 at 351) ("[D]omicile need not be determined by mere numerical comparison of the number of factors that may appear to favor each side of the issue."); *see also Leon v. Caribbean*

Chico-Gomez v. Gonzalez, et. al., Civil No. 14-1268 (BJM)                                                                 7

*Hosp. Corp.*, 848 F. Supp. 317, 318 (D.P.R. 1994) (favoring ties that "could not be easily undone" over more easily established ties). Some ties, such as the establishment of a bank account, obtaining credit and check cashing cards, and even voter registration can be "characterized as superficial; easy to create, at little expense or inconvenience. Likewise, voter registration is indicative of very little for a person who has previously shown no interest in participating in the electoral process," and do not, on their own, indicate a change in domicile. *Leon*, 848 F. Supp. 317 at 318; *García Pérez*, 364 F.3d at 354. It is instead more important to examine the bridges back to Puerto Rico that the plaintiff "failed to burn." *Leon,* 848 F. Supp. 317 at 318. In *Leon*, the court held that the plaintiff was still domiciled in Puerto Rico at the time of filing where she retained her home and all of her furniture in Puerto Rico, failed to discontinue her utility services, had her main source of income, social security payments, sent to her Puerto Rico address, and failed to file federal, state, or city tax returns in her alleged new domicile. *Id.*

      At issue in the determination of Chico's domicile is the validity of her intention to remain in Florida indefinitely as of March 31, 2014. When a party has expressly declared his intent and the opposing written submissions cannot demonstrate the falsity of the declaration with reasonable certainty, the court must hold a hearing in order to "adequately assess [the] credibility" of the declaration, *Prakash v. American University*, 727 F.2d 1174, 1180 (D.C. Cir. 1984), and the First Circuit maintains this position. *See Padilla*, 516 F.3d 29 (the district court erred in granting a motion to dismiss without first holding an evidentiary hearing to ascertain the credibility of the plaintiff's declaration of domicile, but "stress[ing]" that the Court of Appeals was not "predetermining the ultimate findings of the district court.").

Chico undoubtedly has a voter registration I.D., Florida identification card, a Florida Medicaid plan, and has declared, under penalty of perjury, that she is domiciled in Puerto Rico and intends to return. But, the voter registration and identification card can be characterized as "superficial [and] easy to create, at little expense or inconvenience." *Id.* The voter ID card was obtained just four days before filing suit (Docket No. 65), possibly indicating a desire on behalf of Chico to create an appearance of intention to remain, particularly because of the weight typically given to voter registration. No testimony suggests Chico's previous interest in the electoral process and she never voted while living in Florida. And, she maintains a Puerto Rican voter registration card as well. The Medicaid plan was only obtained so Chico could receive medical treatment in Florida (her Puerto Rican medical insurance would not cover her treatment), which was her "sole reason" for going to Florida.

Chico has no property of her own in Florida, pays no rent or taxes in Florida, has no bank account in Florida, and no place of employment or business in Florida. She receives no benefits from the state of Florida, and the one and only letter Chico received from Social Security merely informed her of an increase in benefits, not the sending of benefits to that address or a Florida bank account. She retained her property, furniture, and Puerto Rican bank account, where her main source of income, social security payments, continued to be sent. She also did not file tax returns in Florida or discontinue her utilities in Puerto Rico. Chico claims she has only retained the Puerto Rico Bank account because a bank account is necessary to receive social security payments. Docket No. 65, Ex. 2 at 4: 11 – 17. But, no evidence indicates Chico made any effort to open a bank account in Florida where the payments could be received, which would render the process Chico must

undergo when she needs money in Florida (her daughter in Puerto Rico sends the money to Chico's granddaughter's account in Florida, *Id.* at 7: 11) unnecessary and ultimately indicate a desire to domicile indefinitely in Florida.

Further, subsequent events after filing may bear on the sincerity of professed intention to remain. *See García Pérez*, 364 F.3d at 350–51. In this case, looking to Chico's subsequent actions provides helpful insight. As an initial matter, I recognize that Chico has provided testimony as to her intent to remain in Florida for the better medical treatment and overall quality of life. But, "a party's own declarations concerning his domicile, as is true of any self-serving statement, are subject to judicial skepticism. They are awarded little weight when in conflict with the facts." Wright & Miller § 3617 at 567.

It is unclear why Chico was required to be present in Puerto Rico for the renovations to her house, and it is also unclear whether good-faith efforts have been made to complete the renovations to the house for sale. The medical treatment Chico sought for her leg was completed after the amputation and related treatment and before the filing of the suit. While her testimony indicates that she plans to return to Florida to continue treatment of her leg, Chico's actions do no corroborate this indication. She has not returned to Florida for more than two years and receives all of her necessary medical treatment in Puerto Rico. Less than two weeks after being discharged from the hospital and less than one week from filing suit, Chico returned to Puerto Rico.

After considering the "competent proof" adduced at the hearing, I find, based on a preponderance of the evidence, that Chico's intention was not to be domiciled indefinitely in Florida, but to receive the medical treatment she required for her leg and return to Puerto Rico once the treatment ended. No evidence, other than her testimony, substantiates

Chico's claim that she has made an effort to go back to Florida after returning to Puerto Rico, now more than two years after filing suit. Many of the ties Chico created to Florida are not as substantial as the ties she chose to retain in Puerto Rico.

## CONCLUSION

For the foregoing reasons, the motion is **GRANTED** and the case is **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of June, 2016.


*S/ Bruce J. McGiverin*

BRUCE J. MCGIVERIN
United States Magistrate Judge